UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Minnesota Public Radio,

        Plaintiff,

vs.

Virginia Beach Educational
Broadcasting Foundation, Inc.,
d/b/a Positive Hit Radio The
Current,

        Defendant.        Civ. No. 06-4667 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Motion of the Defendant Virginia Beach Educational

Broadcasting Foundation, Inc. ("VBE"), to Dismiss or, in the Alternative, to Transfer.

At the time of the Hearing, the Plaintiff Minnesota Public Radio ("MPR") appeared by

Ernest W. Grumbles III, Esq., and VBE appeared by Rebecca J. Bishop, Esq.  For

reasons which follow, we recommend that VBE's Motion be granted, and that the action be transferred to the United States District Court for the Eastern District of Virginia.

## II. Factual and Procedural Background

MPR's Complaint alleges that VBE is engaged in unfair competition, and cybersquatting, in violation of the Lanham Act, Title 15 U.S.C. §1051, et seq., deceptive trade practices, under the Minnesota Deceptive Trade Practices Act, Minnesota Statutes Section 325D.43 et seq., and common law trademark infringement, and unfair competition. See, Complaint, Docket No. 1. Further, MPR alleges that it has filed an application with the United States Patent and Trademark Office, in order to register the trademark "The Current" to encompass "educational and entertainment services, namely, production of radio programs that are broadcast via radio and a global computer network, and distribution of radio programs for others," and has also applied for the registration of the marks "Cross Currents," "Live Currents," "The Current Hootenanny," and "The Current Fakebook." Id. at pp. 4-5. MPR asserts that VBE, which is a non-profit corporation that operates a radio station based in Virginia Beach, Virginia, had constructive notice of MPR's trademark rights since December 6, 2004, based upon MPR's application to register "The Current" as a trademark.

For its part, VBE disputes MPR's implication that its mark has official recognition, by noting that "the U.S. Government issued a refusal for [MPR's] application Serial No. 78808250 for the mark THE CURRENT and cited no less than **twenty-seven (27) prior pending applications against [MPR's] application**, as well as twelve (12) federal trademark applications which have been stated by the United States government, in written government action, to result in a 'likelihood of confusion,'" and "[MPR's] alleged 'trademark rights" are also openly contested by more than one entity in proceedings now pending before the U.S. Trademark Trial and Appeal Board." VBE's Reply Memorandum, Docket No. 23, at p. 9 fn. 1 [emphasis in original]. VBE also challenges MPR's contention that MPR was first to use the asserted trademark. Id. at p. 2 ("However, first use is a contested issue on the merits; [MPR] may not simply assume its own alleged first use in order to support its jurisdictional argument.").

According to MPR, notwithstanding the notice it provided to VBE, VBE registered the Internet domain name "currentfm. com" on March 19, 2005, and subsequently, developed a website that incorporates the marks "The Current" and "current fm." See, Complaint, at p. 6. MPR maintains that VBE intentionally offers music in Minnesota, under the name "current fm," via the Internet on myspace.com/

currentfm, and claims that VBE's use of the name "The Current" infringes on MPR's trademark application, and injures the goodwill that is associated with its "The Current" mark.  Id.   MPR seeks both damages, and injunctive relief.  Id. at p. 7.

On January 22, 2007, VBE filed its Motion to Dismiss, arguing that this Court lacks personal jurisdiction over it, and therefore, that MPR's action should be dismissed or, alternatively, that the case should be transferred to the United States District Court for the Eastern District of Virginia.  See, Docket No. 6.

### III.  Discussion

A.    The Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

1.    Standard of Review.  Once a defendant has challenged a Federal Court's jurisdiction over that defendant's person, the plaintiff bears the burden of proving that such jurisdiction exists.  See, Romak USA, Inc. v. Rich, 384 F.3d 979, 983-84 (8th Cir. 2004); Aero Systems Engineering, Inc. v. Opron, Inc. 21 F. Supp. 2d 990, 995 (D. Minn. 1998).  Although the plaintiff bears the ultimate burden, at Trial, to establish personal jurisdiction by a preponderance of the evidence, when the challenge is made in a Motion to Dismiss, the plaintiff need only establish a prima facie case.  Id.; Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir.

- 4 -

2003); citing <u>Falkirk Min. Co. v. Japan Steel Works, Ltd.</u>, 906 F.2d 369, 373 (8th Cir.

1990); <u>Clune v. Alimak AB</u>, 233 F.3d 538, 541 (8th Cir. 2000), cert. denied, 533 U.S.

929 (2001).

Where, as here, personal jurisdiction is challenged at a pretrial stage, all factual

disputes are required to be resolved in the plaintiff's favor.  See, <u>Romak USA, Inc.</u>

<u>v. Rich</u>, supra at 983-84, citing <u>Epps v. Stewart Information Services Corp.</u>, supra at

647; <u>Bell Paper Box, Inc. v. U.S. Kids, Inc.</u>, 22 F.3d 816, 818 (8th Cir. 1994).  Our

inquiry into the Court's personal jurisdiction over a non-resident defendant has two

facets:

> 1)   Whether the facts presented satisfy the forum
>      State's long-arm statute; and
>
> 2)   Whether the non-resident has "minimum
>      contacts" with the forum State so that the
>      Court's exercise of jurisdiction would be fair
>      and in accordance with due process.

<u>Wessels, Arnold & Henderson v. Nat'l Medical Waste</u>, 65 F.3d 1427, 1431 (8th Cir.
1995); <u>Wines v. Lake Havasu Boat Mfg.</u>, 846 F.2d 40, 42 (8th Cir. 1988).

As determined by the Minnesota Supreme Court, Minnesota's Long-Arm Statute,

<u>Minnesota Statutes Section 543.19</u>, extends the State's jurisdiction to the fullest extent

allowed by the Due Process Clause.  See, <u>St. Paul Fire and Marine Ins. Co. v.</u>

<u>Courtney Enterprises, Inc.</u>, 270 F.3d 621, 623 (8th Cir. 2001), citing <u>Minnesota Mining</u>

& Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 697 (8th Cir. 1995), cert.

denied, 516 U.S. 1184 (1996); St. Jude Medical, Inc. v. Lifecare Int'l, Inc., 250 F.3d

587, 591 (8th Cir. 2001), citing Wessels, Arnold & Henderson v. Nat'l Medical Waste,

supra at 1431; Valspar Corp. v. Lukken Color Corp., 495 N.W.2d 408, 410-11 (Minn.

1992).

　　　As a consequence, we need only determine whether an assertion of jurisdiction

over the defendant would be consistent with the constitutional guarantees of Due

Process.　See, Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004),

cert. denied, 543 U.S. 1147 (2005); St. Paul Fire and Marine Ins. Co. v. Courtney

Enterprises, Inc., supra at 623; Wessels, Arnold & Henderson v. Nat'l. Medical

Waste, supra at 1431.

　　　Under the Due Process Clauses of the Fifth and Fourteenth Amendments,

"personal jurisdiction over a nonresident defendant is proper only if the defendant has

certain minimum contacts with [the forum state] such that the maintenance of the suit

does not offend 'traditional notions of fair play and substantial justice.'"　International

Shoe v. Washington, 326 U.S. 310, 316 (1945), citing Milliken v. Mayer, 311 U.S.

457, 463 (1940); Epps v. Stewart Information Services Corp., supra at 647, quoting

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).

In this respect, "the substantial connection between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state."  Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 112 (1987), citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).  In determining the existence of a sufficient level of jurisdictional "contacts," the Court considers whether the defendant's conduct, and its connection to the forum State, are such that the defendant should have reasonably anticipated being haled into the Courts of that State, by purposefully availing itself of the privilege of doing business there.  See, Burger King Corp. v. Rudzewicz, supra at 474.

As the governing law makes clear:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts * * * or because of the "unilateral activity of another party or a third person."

Burger King Corp. v. Rudzewicz, supra at 475; see also, Stanton v. St. Jude Medical, Inc., 340 F.3d 690, 693-94 (8th Cir. 2003).

Accordingly, in determining the sufficiency of a defendant's contacts, the Court must evaluate the following factors:

1)    the nature and quality of contacts with the forum state;

2)    the quantity of such contacts;

3)    the relation of the cause of action to the contacts;

4)    the interest of the forum state in providing a forum for its residents; and

5)    the convenience of the parties.

Stanton v. St. Jude Medical, Inc., supra at 694, citing Austad Co. v. Pennie & Edmonds, 823 F.2d 223, 226 (8th Cir. 1987); Romak USA, Inc. v. Rich, supra at 984, citing Dever v. Hentzen Coatings, Inc., supra at 1073-74; Aylward v. Fleet Bank, 122 F.3d 616, 618 (8th Cir. 1997).

Of these factors, the first three are of primary importance, and are usually considered together.  Id. at 694;  Romak USA, Inc. v. Rich, supra at 984 ("We give 'significant weight * * * to the first three factors.'"), quoting Dever v. Hentzen Coatings, Inc., supra at 1073-74; Juelich v. Yamazaki Mazak Optonics Corp., 682 N.W.2d 565, 570 (Minn. 2004).  Furthermore, when considering the third factor, whether the jurisdiction is "specific," or is "general," will distinguish the relationship between the cause of action, and the contacts.  See, Wessels, Arnold & Henderson v. Nat'l. Medical Waste, supra at 1432 n. 4; Bell Paper Box, Inc. v. U.S. Kids, Inc., supra at 819.

"General" jurisdiction refers to the power of a State to adjudicate any cause of action, irrespective of where the cause of action arose, and it requires that the defendant have substantial contacts with the forum that are "continuous and systematic." Id.; Epps v. Stewart Information Services, Inc., supra at 648 ("[I]f the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state, the exercise of personal jurisdiction is one of general jurisdiction."); Lakin v. Prudential Sec., Inc., 348 F.3d 704, 708 (8th Cir. 2003).

On the other hand, jurisdiction is "specific" when it arises from, or relates to, the defendant's specific actions in the forum State, which generated the plaintiff's claim. See, Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408, 414 n. 8 (1984); Epps v. Stewart Information Services, Inc., supra at 648 ("When a cause of action arises out of or is related to a defendant's contacts with the forum state, the exercise of personal jurisdiction is one of specific jurisdiction.").

Our Court of Appeals has adopted the sliding-scale test, that is set forth in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to determine when the nature and quality of a defendant's presence on the

Internet establishes "minimum contacts" contacts with the forum State.[1]  See, <u>Lakin v. Prudential Securities, Inc.</u>, supra at 711-12.  The <u>Zippo</u> Court described the test as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  As the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign

---

[1]While we follow the parties' lead in addressing the jurisdiction question under Federal law, our Court of Appeals, in <u>Lakin v. Prudential Securities, Inc.</u>, 348 F.3d 704, 710 (8th Cir. 2003), intimated that State law may control the "minimum contacts" analysis.  While not thoroughly explored by the parties, our independent research discloses that Minnesota Courts also apply a "sliding scale" approach and, because the ultimate determination is so highly fact-dependent, a categorical, "cookie-cutter" approach would be inappropriate, as the circumstances that influence our analysis range across a broad spectrum.  See, e.g., <u>Juelich v. Yamazaki Mazak Optonics Corp.</u>, 670 N.W.2d 11, 18 (Minn.App. 2003), aff'd, 682 N.W.2d 565, 574 (Minn. 2004), citing <u>Multi-Tech Sys., Inc. v. VocalTec Communications, Inc.</u>, 122 F. Supp.2d 1046, 1052 (D. Minn. 2000)(applying <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F. Supp. 1119 (W.D. Pa. 1997); <u>State by Humphrey v. Granite Gate Resorts</u>, 568 N.W.2d 715, 719-21 (Minn.App. 1997)(applying <u>Zippo</u>), aff'd mem., 576 N.W.2d 747 (1998); <u>Lorix v. Compton Corp.</u>, 680 N.W.2d 574, 582-83 (Minn.App.2004), citing <u>Quality Improvement Consultants v. Williams</u>, 2003 WL 543393 at *5-6 (D. Minn. 2003)(which applied <u>Zippo</u>); <u>Viad v. McCormick Int'l, U.S.A., Inc.</u>, 2006 WL 2347822 at *4-5 (Minn.App., August 15, 2006)(citing <u>Lakin v. Prudential Securities, Inc.</u>, supra at 710-11, and applying <u>Zippo</u>).  Accordingly, the Recommendation we make is also consonant with Minnesota law.

> jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.  In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. at 710-11, quoting Zippo Manufacturing Co. v. Zippo Dot Com, Inc., supra at 1124.

The Zippo test applies in determinations of both specific and general jurisdiction, although, "under the Zippo test, it is possible for a Web site to be very interactive, but to have no quantity of contacts," and consequently, for a determination of general jurisdiction, we must additionally examine the defendant's contacts with the forum State to determine if they are substantial. Id. at 712.

      2.    Legal Analysis.  MPR does not allege that VBE has the requisite "continuous and systematic" contacts that are essential to an assertion of general jurisdiction, but rather, MPR argues that VBE's contacts with Minnesota, as they relate to its allegedly infringing use of the marks "Current FM," and "The Current," convey specific jurisdiction in this forum.  See, MPR's Memorandum in Opposition, Docket No. 20, at p. 16 fn. 7 ("MPR does not allege general jurisdiction, but rather alleges the [VBE]'s contacts with this state relating to its infringing use of the marks CURRENT

FM and THE CURRENT convey specific jurisdiction."). Therefore, we confine our analysis to a discussion of specific personal jurisdiction, which VBE contests, claiming that it has not purposefully availed itself of this forum, in any way that was directly related to MPR's causes of action.

We begin by considering the nature, quality, and quantity, of VBE's contacts with Minnesota. Both parties agree that VBE's contacts with Minnesota are found entirely through its presence on the Internet, as VBE does not have any traditional contacts, in Minnesota, such as an office, property, or employees. See, Declaration of William M. Verebely, Jr., Docket No. 9-2, at p. 1, ¶4. MPR alleges that VBE had fair warning that it would be subject to personal jurisdiction, in Minnesota, since VBE took affirmative steps to establish a presence on the Internet that included live audio streaming and a blog, and additionally, because VBE created an online store, that were all available to Internet users in this forum. VBE challenges MPR's contention, that making streaming audio available on its website, or allowing interactivity between the user's and VBE's computers by means of email links, or an online store that is hosted by a third party, is sufficient to confer specific personal jurisdiction.

VBE maintains an Internet presence on two (2) websites -- MySpace.com[2] and currentfm.com – that are accessible to all users of the Internet, including Minnesota residents.   See,  Declaration of William Schultz, Docket No. 21, at Exhibits 12-16. Viewing, as we must, the facts of Record in MPR's favor, we find that VBE's presence, on the Internet, falls somewhere in the middle category of the continuum recognized by the Zippo Court.   VBE has assuredly done more than create an entirely passive web presence, since visitors to VBE's MySpace.com page can listen to streaming live audio, post comments, and subscribe to the Defendant's blog, and on the website currentfm.com, visitors can also listen to live audio, email VBE, make monetary donations, and purchase merchandise through a third party vendor.

As to the furthest end of the spectrum, MPR does not allege, and no evidence in the Record suggests, that VBE uses its presence on the Internet to enter into contracts with Minnesota residents who visit its websites.   Accordingly, we must look

---

[2]MySpace.com is a "'social networking website' that allows members to create online 'profiles,' which are individual web pages on which members post photographs, videos, and information about their lives and interests." Doe v. MySpace, Inc., 474 F. Supp. 2d 843, 845 (W.D. Tex. 2007).  After creating a profile, a MySpace.com member can invite other members to become his "friend," and can communicate with those friends on the MySpace.com website via email, instant messaging, or blogs. Id. at 846.

- 13 -

more closely at the Defendant's web presence in order to determine if it is sufficiently interactive, and commercial, to have placed VBE on notice that it could be subject to jurisdiction in Minnesota.

The Court, in Quality Improvement Consultants, Inc. v. Williams, 2003 WL 543393 at *6 (D. Minn., February 24, 2003), was similarly charged with examining a website so as to determine whether it was sufficiently interactive to establish personal jurisdiction in this forum.  The Court noted that, although the defendant's website advertised services, and offered publications for sale, online, to users who submitted their billing, shipping, and credit card information, there was no evidence that the defendant had engaged in any transaction, or exchange of information, with a Minnesota resident via the Internet.  Id.  In finding that the website was not sufficiently interactive to establish personal jurisdiction, the Court observed that, if the defendant's marginally-interactive website were sufficient, alone, to establish minimum contacts, "then due process would impose little restraint over every e-commerce entrepreneur who offers goods or services for sale online."  Id.; see also, Viad Corporation v. McCormick International, U.S.A., Inc., 2006 WL 2347822 at *4-5 (Minn.App., August 15, 2006)(the defendant's website permitted users to locate dealerships for its products by zip code, but did not allow purchases online or entering into contracts,

and so was not sufficient to establish personal jurisdiction); <u>Vang v. Whitby Tool & Engineering Co. Ltd.</u>, 2007 WL 522304 at *4 (D. Minn., February 15, 2007)(website neutral in analysis of personal jurisdiction when it only advertised products and provided contact information).

The Court, in <u>Quality Improvement</u>, contrasted the facts, there, with two other recent decisions by Courts, in this District, which found personal jurisdiction based upon the defendant's Internet presence.  In <u>Multi-Tech Systems, Inc. v. VocalTech Communications, Inc.</u>, 122 F. Supp. 2d 1046 (D. Minn. 2000), the Court concluded that sufficient actions had taken place, in this forum, to establish personal jurisdiction, when visitors to the defendant retailer's website could register, download, and use, an allegedly infringing software product, and at least one (1) Minnesota resident had actually used the website to enter into a contract with the defendant, pursuant to that software.

Similarly, in <u>Mulcahy v. Cheetah Learning LLC</u>, 2002 WL 31053211 at *1 (D. Minn., September 4, 2002), the Court confronted an online retailer, who marketed enrollment in an allegedly infringing training course, directly to Minnesota residents. Although the <u>Mulcahy</u> Court did not apply the <u>Zippo</u> test, it did consider the degree of interactivity between Minnesota users, and the website, and found that actual sales

- 15 -

of seats for the course, to Minnesota residents via the Internet, was sufficient to establish the minimum contacts essential to the exercise of personal jurisdiction.  <u>Id.</u> at *3; see also, <u>3M Company v. Icuiti Corporation</u>, 2006 WL 1579816 at *2 (D. Minn., June 1, 2006)(personal jurisdiction found when the defendant retailer advertised products across the country, including in Minnesota, entered into contracts for sale, through its website to consumers with addresses in Minnesota, and collected payment information over the website); <u>Transcentral, Inc. v. Alliance Asphalt, Inc.</u>, supra at *13 (a defendant's website justified a finding of substantial contacts, with Minnesota, when it was highly commercial, allowing users to apply for jobs, view the status of their insurance claims, and pay bills via the Internet, and was accompanied by the active promotion, in this State, of the services available on the website).

MPR suggests that the streaming audio, that is available on VBE's websites, is sufficiently interactive to provide a basis for personal jurisdiction, since users must click to initiate the broadcast, and it is "likely" that online disk jockeys solicit donations, and sponsorships, during their radio shows.  See, <u>Plaintiff's Memorandum in Opposition</u>, supra at p. 19.  Even if we accept, as true, MPR's unsubstantiated claim, that VBE broadcasters ask listeners to make donations, we could not responsibly find that to be a commercial exchange that satisfies the requirements of the

Zippo test.  VBE is a non-profit corporation that offers its streaming audio as a free service, and the broadcasts are not downloaded onto the listener's computer. Moreover, MPR has made no showing that VBE deliberately marketed its streaming audio service to Minnesota residents.  To the contrary, it appears that, just as MPR streams its programming through its own website, and MySpace.com page, to anyone with Internet access, VBE also aims to furnish, to its listeners, access to their broadcasts when those listeners exceed the normal range of that broadcast.  See, VBE's Reply Memorandum, at p. 2.  While developing a national, or international audience, is certainly a derivative advantage of the website and, as MPR points out, VBE is listed in the promotional materials of ChristianNetcast.com as a radio station that can be listened to "worldwide," see, Declaration of William Schultz, supra at Exhibit 11, that evidence does not disclose any intent, by VBE, to specifically target Minnesota residents.

In addition, MPR emphasizes that at least one (1) Minnesota resident visited Virginia Beach, Virginia, heard the Defendant's terrestrial broadcast, and subsequently, on her return to Minnesota, listened to the streaming audio that was offered by VBE

on her computer.[3]  See, <u>Plaintiff's Memorandum in Opposition</u>, <u>Docket No. 20</u>, at p.

6, citing <u>Declaration of Schultz</u>, supra at Exhibit 17.  However, this proof shows no

more than VBE concedes -- namely, that a resident of Minnesota can gain access to

VBE's website -- and, in fact, corroborates VBE's contention that the website is

designed to allow access to a station, by those who listen to it in Virginia, and want to

listen to it when they are away.

The test for specific personal jurisdiction requires us to find particularized

actions that were taken by VBE in the forum State.  The issue here is not whether

VBE's websites, and streaming audio broadcasts, are accessible in Minnesota, but

whether that generic availability constitutes actions specifically targeted to this State.

Allegations of a single, non-commercial contact, are insufficient to establish personal

jurisdiction where, as here, they appear to be random, or initiated by the interest of a

listener who had heard VBE's broadcast outside the District of Minnesota, and

therefore, are serendipitous.

---

[3]MPR claims that other Minnesota residents have logged onto VBE's website, and notes that Steve Nelson, who is the program director for MPR's The Current broadcasting station, logged onto VBE's website in the Fall of 2006.  See, <u>Declaration of Schultz</u>, <u>Docket No. 21</u>, at Exhibit 19.  Such deliberate exposure to VBE's broadcast hardly proves MPR's point, as VBE does not dispute that its website is universally available via the Internet.

MPR additionally claims that VBE employs online streaming to generate listener support, and encourage donations via its website.  Id. at p. 7.  VBE concedes that there is a link, on the currentfm.com website, that allows listeners to make donations, or become "business partners," but it has attested that no such donations have been made by a Minnesota resident since it initiated its web presence.  See, Declaration of Verebely, supra at p. 2, ¶7.  Similarly, while VBE runs contests on its website, the contests are limited to residents of the Hampton Roads, Virginia area, and therefore, they do not establish any form of contact with the State of Minnesota, or its residents. See, Declaration of Verebely, supra at p. 1, ¶3.

Finally, MPR alleges that VBE maintains an Internet "Store" that is sufficiently commercial, and so directed at Minnesota residents, to establish personal jurisdiction. When users of the currentfm.com site click on the "Store" link, they are directed to a third party website, MusiChristian.com.  See, Declaration of Schultz, supra at Exhibit 12.  There, users may order goods, and a "drop box" allows users to select Minnesota as a delivery option on the checkout page.  Id.  If VBE were indeed positioning itself as an online retailer of goods, we could well find that the exercise of personal jurisdiction was appropriate.  However, VBE attests that it has received a total of $6.00

from that website in the past year, with none of proceeds coming from users in Minnesota.  See, <u>Declaration of Verebely</u>, <u>Docket No. 9-2</u>.

In the context of evaluating a defendant's contacts with a forum State, a Court in this District has previously held that "our relevant inquiry is not whether the percentage of a company's contacts is substantial **for the company**; rather, our inquiry focuses on whether the company's contacts are substantial for the **forum**." <u>Transcentral, Inc. v. Alliance Asphalt, Inc.</u>, 2007 WL 951545 at *3 (D. Minn., March 27, 2007), citing <u>Lakin v. Prudential Securities, Inc.</u>, supra at 709 [emphasis in original].  Even if all of VBE's website sales for goods had been to Minnesotans, which they were not, we are legally unable to responsibly conclude that $6.00 in sales, over the course of approximately one (1) year, represents a substantial economic relationship to the State of Minnesota such as to satisfy the due process requisites required by minimum contacts paradigm.

As to the second factor of the test for personal jurisdiction -- the quantity of the contacts -- we have already noted that VBE has sold less than $6.00 of merchandise on its website, which suggests that it has had very few commercial interactions with users and, in any event, none with Minnesota residents.  MPR alleges that at least one (1) Minnesota resident has contacted VBE, by email, to say that she listens to its

internet radio station.  See, <u>Declaration of Schultz</u>, supra at Exhibit 17.  However, "minimal email correspondence 'by itself or even in conjunction with a single purchase, does not constitute sufficient minimal contacts'" to establish personal jurisdiction.  <u>Machulsky v. Hall</u>, 210 F. Supp. 2d 531, 542 (D.N.J. 2002).  VBE concedes that at least eight (8), or nine (9), Minnesota residents have signed up as "friends" on VBE's MySpace.com page, and that several of those Minnesota-based "friends" have left comments on VBE's MySpace.com page which, MPR urges, constitutes an actual and direct contact with this forum.

We have no evidence, however, in this Record, that VBE was anything other than wholly passive in the acquisition of those "friends," and further, the sparse number of those contacts is insufficient to provide a sound footing for personal jurisdiction.  See, <u>Vdata, LLC v. Aetna, Inc.</u>, 2006 WL 3392889 at *13 (D. Minn., November 21, 2006)(personal jurisdiction found given the hundreds of contracts formed via the defendant's website); <u>Maritz, Inc. v. Cybergold, Inc.</u>, 947 F. Supp. 1328, 1333 (E.D. Mo. 1996)(personal jurisdiction found where over one hundred and thirty (130) contacts existed between forum State residents, and the defendant's website).  Moreover, MPR also sports a MySpace.com page, which features streaming audio, and allows users to send email, or instant messages, and we have no

reasons to believe, and MPR offers none, that MPR's receipt of a MySpace.com posting, from a "friend" in Hawaii, to use but one example, would establish specific personal jurisdiction, over it, in that even more distant jurisdiction.  Passively accepting such a posting starkly fails to show any intention, by VBE, or hypothetically MPR, to avail itself of the services of the State from which the posting emanated.

In turning to the last two (2) factors of the test, we find that, while Minnesota has an interest in providing a forum for its citizens, that factor does not outweigh the first three factors, which favor a dismissal, or transfer, of MPR's claims against VBE.  Additionally, we find that the convenience of the parties is fairly evenly balanced, as each has witnesses and documents that are primarily located in its own State of residence, and therefore, the factor does not favor either MPR or VBE.  Therefore, since we conclude that haling VBE into Court, in this forum, would not comport with traditional notions of fair play and substantial justice, we are unable to find that personal jurisdiction extends over VBE as to the claims asserted in MPR's Complaint.

c.    The Calder "Effects" Test.  As an alternative to the Zippo test, MPR urges that we apply the test enunciated in Calder v. Jones, 465 U.S. 783 (1984), and conclude that personal jurisdiction extends over VBE, since VBE has directed "intentional, tortious actions" at Minnesota by allegedly infringing upon

MPR's trademark.  See, e.g., <u>Richter v. Erwin</u>, 2006 WL 562147 at *4-5 (D. Minn.,

February 10, 2006)(applying <u>Calder</u> "effects test" to a defamation claim). We disagree.

The <u>Calder</u> "effects" test allows a Court to exercise personal jurisdiction over

a foreign defendant -- such as VBE -- where:

> 1)    the defendant committed an intentional tort;
>
> 2)    the plaintiff felt the brunt of the harm in the forum
>        state, such that the forum state was the focal point of
>        the tortious activity; and
>
> 3)    the defendant expressly aimed the tortious conduct
>        at the forum such that the forum state was the focal
>        point of the tortious activity.

<u>Bible & Gospel Trust v. Wyman</u>, 354 F. Supp. 2d 1025, 1030-31 (D. Minn. 2005),
citing <u>Calder v. Jones</u>, supra at 788-90.

Therefore, <u>Calder</u> permits the assertion of personal jurisdiction over a foreign

defendant whose acts "'are performed for the very purpose of having their

consequences felt in the forum state.'"  <u>Dakota Industries, Inc. v. Dakota Sportswear,

Inc.</u>, 946 F.2d 1384, 1390-91 (8th Cir. 1991), citing <u>Brainerd v. Governors of the Univ.

of Alberta</u>, 873 F.2d 1257, 1260 (9th Cir. 1989).

The <u>Calder</u> test is construed narrowly, see, <u>Superior Edge, Inc. v. Maricopa

County Community College District</u>, 2007 WL 1101185 at *6 (D. Minn., April 5,

2007), citing <u>Crystal Group, Inc. v. Boston Communications Group, Inc.</u>, 2000 WL

34031499 at *6 (N.D. Iowa, April 26, 2000), and does not negate the five (5) part test for personal jurisdiction that is set forth in <u>Stanton v. St. Jude Medical, Inc.</u>, supra, but merely requires the consideration of additional factors, when an intentional tort is alleged.  See, <u>Dakota Industries, Inc. v. Dakota Sportswear, Inc.</u>, supra at 1391, citing <u>Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.</u>, 784 F.2d 1392, 1397 (9th Cir. 1986).

As the Court noted, in <u>Superior Edge, Inc. v. Maricopa County Community College District</u>, supra at *6-7, "[a]lthough the <u>Calder</u> test is sometimes characterized in shorthand as the 'effects' test, 'more than mere effects'" must be found for personal jurisdiction to be appropriate.  In <u>Superior Edge</u>, the Court found that mere knowledge, on the part of the defendant, that the plaintiff would feel the injury, which arises out of the alleged trademark infringement in Minnesota, was necessary to invoke <u>Calder</u>.  Likewise, in <u>Bible & Gospel Trust v. Wyman</u>, supra at 1031, the Court applied the <u>Calder</u> "effects" test to a cause of action, which was based on an allegedly infringing website, and found that personal jurisdiction was inappropriate where the defendant's website was not deliberately directed at Minnesota residents, and did not draw its content from Minnesota-specific sources.  Ultimately, in order to prevail on the <u>Calder</u> test, MPR must still establish a <u>prima facie</u> case of minimum contacts with

the forum State.  See, Principal Financial Securities, Inc. v. Big Finance & Insurance

Services, Inc., 451 F. Supp. 2d 1046, 1060-61 (S.D. Iowa 2006).

Since we have already concluded, that MPR has failed to sustain its burden in

demonstrating the existence of sufficient minimum contacts with Minnesota so as to

permit the extension of personal jurisdiction over VBE – by showing, for example, that

VBE deliberately infringed upon MPR's unregistered mark in order to have an effect,

in Minnesota, by drawing off MPR's patrons, or imparting confusion on the part of

the listeners -- we find that the Calder test is unavailing.  See, Superior Edge, Inc. v.

Maricopa County Community College District, supra.  We are mindful of MPR's

allegation, that VBE deliberately attempted to harm MPR's interests, by sending a

letter dated July 21, 2006, to the United States Trademark Office, which requested that

MPR's application for the mark "The Current" be dismissed, see, Plaintiff's

Memorandum in Opposition, supra at p. 14, but, without a more particularized

showing, such a generalized challenge to a trademark application does not represent

a deliberately tortious act, by VBE, which was performed with an intent to harm MPR

in this forum.  As we have noted, the focal point of both of VBE's contested websites

was the online Christian community, and not the residents of the State of Minnesota.

In sum, we find that, while MPR asserts a cause of action against VBE, we lack personal jurisdiction over VBE, as required by the Due Process Clause, to hear MPR's Complaint, and therefore, we  recommend that this case be transferred to the United States District Court for the Eastern District of Virginia, where personal jurisdiction over VBE unquestionably exists.[4]

NOW, THEREFORE, It is --

RECOMMENDED:

---

[4]In Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962), the Court recognized that, pursuant to Title 28 U.S.C. §1406(a), District Courts have the power, and discretion, to transfer cases for lack of personal jurisdiction, as well as for improper venue.  See, Eggleton v. Plasser & Theurer Export Von Bahnbaumashinen Gesellschaft, MBH, --- F.3d ---, 2007 WL 2121938 at *2 (8th Cir., July 25, 2007).  As we have stated elsewhere, "[t]ransfer pursuant to §1406 to remove a procedural obstacle such as lack of personal jurisdiction is favored over dismissing an action because transfer facilitates the adjudication of a dispute on its merits."  Schneeweis v. Northwest Technical College, 1998 WL 420564 at * 10 (D. Minn., June 1, 1998), quoting Wilson v. St. Mary's Hosp., 822 F. Supp. 1450, 1451 (D. Minn. 1993); see also, Quality Improvement Consultants v. Williams, 2003 WL 543393 at *9 (D. Minn., February 24, 2003)(same).   Rather than to risk some unknown and unintended effects if this action were dismissed without prejudice, we conclude that a transfer of the case is a better exercise of our discretion.

That the Defendant's Motion to Dismiss or, in the Alternative, to Transfer [Docket No. 6] be granted, and that this action be transferred to the United States District Court for the Eastern District of Virginia.

Dated:  August 20, 2007                              s/Raymond L. Erickson

                                                     Raymond L. Erickson
                                                     CHIEF U.S.  MAGISTRATE JUDGE

### NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **September 7, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **September 7, 2007**, unless all interested

- 27 -

parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.